UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **TAMRA GAMBLE,** | ) | CASE NO. 1:12CV1027 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | <u>OPINION AND ORDER</u> |
| | ) | |
| **NESTLE USA, INC., et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

<u>**CHRISTOPHER A. BOYKO, J.**</u>:

This matter comes before the Court upon the Motion (ECF DKT #4) of Defendants, Nestle USA, Inc. and Virginia Hegwood, to Dismiss Complaint With Prejudice.  For the following reasons, the Motion is granted in part, and Plaintiff's claims for wrongful termination in violation of public policy (Count III); hostile work environment (Count IV); and intentional infliction of emotional distress (Count V) are dismissed.

<u>**I. FACTUAL BACKGROUND**</u>

Plaintiff, Tamra Gamble, a Black female, was a former employee of Nestle.  During her employment, she allegedly complained to the Human Resources Department about racial

comments made to her by her co-worker, Maria Sidiscuss. Plaintiff also allegedly reported these incidents to management at Nestle, including her supervisors, Darnell Gibson and Jeff Weaver. According to Plaintiff, Nestle took no steps to correct or end the racially-based comments directed against her during her employment. Subsequently, on March 14, 2011, an anonymous employee reported to management that Plaintiff was allegedly under the influence of alcohol/drugs upon coming into work. Management approached Plaintiff and asked her to take an alcohol/drug test. Plaintiff alleges that she complied; and pursuant to the Nestle's handbook, she immediately went to an independent physician to have the test taken. Upon obtaining a negative result for alcohol and drugs, Plaintiff returned to work to present the results to Hegwood, a Human Resources employee. However, upon her return, Hegwood told Plaintiff that she was terminated from her employment, and Hegwood did not investigate further into the test results. Plaintiff alleges that Nestle treated her differently from other similarly situated employees based on her race; and Nestle's use of the alcohol/drug test to justify Plaintiff's termination is merely a pretext for discrimination. Moreover, Plaintiff alleges that, pursuant to Nestle's handbook, "if a negative [drug/alcohol] test result is obtained, the person must be reinstated immediately." Therefore, Plaintiff claims that her termination was wrongful and contrary to Ohio law.

       Plaintiff filed her Complaint in the Cuyahoga County Court of Common Pleas on March 15, 2012, presenting five Counts: I. Race Discrimination; II. Wrongful Termination Based on Race Discrimination; III. Wrongful Termination in Violation of Public Policy; IV. Hostile Work Environment; and V. Intentional Infliction of Emotional Distress. Defendants removed the case to Federal Court on April 26, 2012. On May 3, 2012, Defendants moved for

an order dismissing Plaintiff's Complaint in its entirety, pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff filed her Memorandum in Opposition on May 21, 2012, and Defendants filed their Reply Brief on May 29, 2012.

## II. LAW AND ANALYSIS

**Standard of Review**

"In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc.* v. *Treesh,* 487 F.3d 471,476 (6th Cir.2007). Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir.1990). The United States Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), discussed *Twombly* and provided additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-plead factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.
> *Id*. at 679.

Accepting Plaintiff Gamble's factual allegations as true, and drawing all reasonable inferences in her favor, the Court finds that Counts I and II state claims which are plausible on

their face.  However, for the reasons that follow, the Court agrees with Defendant that the remaining claims of Plaintiff's Complaint are deficient under Fed.R.Civ.P. 12(b)(6).

**Count III: Wrongful Termination in Violation of Public Policy**

After re-stating each previous paragraph of her Complaint, Plaintiff alleges:

37.  A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating an employee based on racial prejudice, bias and/or discrimination.

38.  Defendants' termination of Gamble jeopardizes these public policies.

39.  Defendants' termination of Gamble was motivated by conduct related to these public policies.

40.  Defendants had no overriding business justification for terminating Gamble.

41.  As a direct and proximate cause of Defendants' wrongful conduct, Gamble suffered and will continue to suffer damages.

Defendants argue that Plaintiff's public policy claim based on race discrimination does not exist under Ohio law.  The Court agrees.  To maintain such a claim, Plaintiff must allege:

1.  That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element);

2.  That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element);

3.  The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element); and

4.  The employer lacked overriding legitimate business justification for the

dismissal (the *overriding justification* element).

*Collins v. Rizkana*, 73 Ohio St.3d 65, 1995 Ohio 135, 652 N.E.2d 653, 657-58 (Ohio 1995) (citations omitted). "[T]he clarity and jeopardy elements ... are questions of law to be determined by the court," while "'the jury decides factual issues relating to causation and overriding justification.'" *Id.* at 658 (citation omitted).

Plaintiff's wrongful termination claim fails on the jeopardy element. Ohio law is clear that, if existing law already provides remedies sufficient to vindicate the public policy at issue, a plaintiff may not maintain a common-law wrongful discharge claim. *Grair v. Ohio Bell*, Case No. 1:09CV1516, 2009 WL 2762359, at *2 (N.D.Ohio Aug. 28, 2009) (citing *Leininger v. Pioneer Nat'l Latex*, 115 Ohio St.3d 311 (2007)). In Counts I and II of her Complaint, Plaintiff relies upon Ohio Revised Code Section 4112.

"Ohio law does not 'recognize a common-law claim when remedy provisions are an essential part of the statutes on which the plaintiff depends for the public policy claim and when those remedies adequately protect society's interest by discouraging the wrongful conduct.'" *Wakefield v. Children's Hospital*, No. C2-06-1034, 2008 WL 3833798 at *8 (S.D.Ohio Aug. 13, 2008) (quoting *Leininger*, 115 Ohio St.3d at 317). "No public policy race discrimination or retaliation claims exist in Ohio because § 4112, with its 'full panoply of remedies, including compensatory and punitive damages,' adequately protects society's interests." *Carter v. Delaware County Bd. of Com'rs*, No. 2:07CV1189, 2009 WL 544907 at *13 (S.D.Ohio Mar.3, 2009) (quoting *Leininger, id.*).

Therefore, under the Ohio Supreme Court's holding in *Leininger*, as followed in *Wakefield*, *Carter* and *Grair*, Plaintiff's claim for wrongful termination in violation of public

policy fails.

**Count IV: Hostile Work Environment**

Once again, after re-stating prior paragraphs, Plaintiff alleges as follows:

43. During her employment at Nestle, [Gamble] was subjected to offensive and harassing conduct by other Nestle's employees based on her race.

44. Nestle condoned, tolerated and ratified this racially harassing conduct.

45. This harassing conduct was severe and/or pervasive.

46. This harassing conduct was offensive to Gamble.

47. Nestle's offensive and harassing conduct created a hostile and/or abusive work environment for Gamble.

48. Nestle's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Gamble.

49. As a direct and proximate cause of Nestle's conduct, Gamble suffered and will continue to suffer damages.

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." See *Bailey v. USF Holland*, *Inc.,* 526 F.3d 880 (6th Cir.2008); *Butler v. Cooper-Standard Automotive Inc.*, No. 8-162, Slip Copy, 2009 WL 455337 (N. D. Ohio Feb. 23, 2009); *Bowman v. Shawnee State University,* 220 F.3d 456, 462, (6th Cir.2000); *Hafford v. Seidner*, 183 F.3d 506 (6th Cir.1999). To establish a hostile work environment claim, Plaintiff must prove that: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on Plaintiff's race; (4) the harassment affected a

term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassing conduct but failed to take corrective or preventative actions. *Armstrong v. Whirlpool Corp.*,363 Fed. App'x. 317 (6th Cir.2010); *Barrett v. Whirlpool Co.*, 556 F.3d 502, 515 (6th Cir.2009).

Plaintiff's allegations, in Count IV, are conclusory, non-specific, and insufficient to support a hostile work environment claim.  Although Plaintiff alleges she is a member of a protected class; that she was subjected to at least some unwelcome harassment that was based upon her race; and that her employer, Nestle, was informed, but did not take corrective or preventive action, she does not describe the "racial comments" or their frequency, and merely makes the formulaic recitation of severity and pervasiveness.

"A recurring point in the Supreme Court's opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment and that conduct must be extreme to amount to a change in the terms and conditions of employment." *Hafford*, 183 F.3d at 512-513 (internal citations omitted).  Unfortunately, the factual allegations in Plaintiff's Complaint, even if established and considered as a whole, fail to show "discriminatory intimidation, ridicule, or insult" sufficient to alter the conditions of her employment or create an abusive working environment.  Therefore, Plaintiff's hostile work environment claim fails to raise a right to relief which is plausible on its face.

**Count V: Intentional Infliction of Emotional Distress**

The elements of an intentional infliction of emotional distress claim in Ohio are: (1) the defendant intended to cause emotional distress, or knew or should have known that its

conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's harm; and (4) the plaintiff's emotional harm is so severe that no reasonable person would be expected to endure it. *Hale v. Village of Madison*, 493 F.Supp.2d 928, 940 (N.D.Ohio 2007).

> Plaintiff's Count V exactly mirrors these bare elements where she alleges:
>
> 51. Defendants intended to cause Gamble emotional distress, or knew that its acts or omissions would result in serious emotional distress to Gamble.
>
> 52. Defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.
>
> 53. As a direct and proximate cause (sic) of Defendants' acts and omissions as set forth above, Gamble has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.
>
> 54. As a direct and proximate cause (sic) of Defendants' conduct and the resulting emotional distress, Gamble suffered and will continue to suffer damages.

This is precisely the insufficient pleading that *Twombly* and *Iqbal* intended to address. "[T]o say that Ohio courts narrowly define 'extreme and outrageous conduct' would be something of an understatement." *Baab v. AMR Services Corp.*, 811 F.Supp. 1246, 1269 (N.D.Ohio 1993). In the instant matter, although the first element, Defendant-employer's intent, and the third element, proximate causation, are satisfied at least in a "bare bones" fashion, Plaintiff has not satisfactorily set forth the remaining two elements of an intentional infliction of emotional distress claim in a way that can survive dismissal.

Under Ohio law, an at-will employee "may be terminated at any time for any lawful reason or for no reason at all." *Herrington v. DaimlerChrysler Corp.*, 262 F.Supp.2d 861, 864 (N.D.Ohio 2003).  Moreover, "an employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more.  If such were not true, then every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 375-76 (6th Cir.1999).

Thus, Plaintiff's termination, even with alleged discrimination based upon racial comments, without more elucidation of their nature, severity and frequency, does not cause the average person in our society to yell, "Outrageous."  *See* Restatement (Second) of Torts § 46.  Count V of Plaintiff's Complaint is dismissed.

### III. CONCLUSION

The Motion (ECF DKT #4) of Defendants, Nestle USA, Inc. and Virginia Hegwood, to Dismiss Plaintiff's Complaint is granted in part, and Plaintiff's claims for wrongful termination in violation of public policy (Count III); hostile work environment (Count IV); and intentional infliction of emotional distress (Count V) are dismissed.

**IT IS SO ORDERED.**

                **s/ Christopher A. Boyko**
                **CHRISTOPHER A. BOYKO**
                **United States District Judge**

**DATED:  August 9, 2012**